UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| THE KROGER COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on disability and to provide appropriate relief to Michael Haugabrook ("Haugabrook"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "Plaintiff") alleges that The Kroger Company ("Kroger" or "Defendant") denied Haugabrook a reasonable accommodation, and terminated Haugabrook's employment based on his disability in violation of the ADA.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section

1

107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division. Venue is proper in this Court under 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, The Kroger Company, had its principal place of business in Ohio, conducted business in the State of Georgia, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111 (7), which

incorporate by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. § 2000e (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Haugabrook filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

7. On June 14, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On October 25, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. Since on or about March 2016, Defendant has engaged in unlawful employment practices at its Jonesboro, Georgia store in violation of Section 102 of the ADA, 42 U.S.C. §12112(a) and (b).

11. Haugabrook is a qualified individual with a disability under 42 U.S.C. §§ 12102 and 12111(8). Haugabrook has a visual impairment that substantially limits him in major life activities, including but not limited to functions of the ocular system.

12. Since birth, Haugabrook has suffered from this visual impairment. Due to his condition, Haugabrook cannot identify small text when reading or looking at a computer screen. However, Haugabrook can identify and read text from a normal distance when the font is enlarged.

13. Defendant knew that Haugabrook was disabled, and regarded him as disabled when it terminated him from the courtesy clerk position because of an actual or perceived impairment.

14. Haugabrook applied for a position as an hourly retail associate at Defendant's Jonesboro, Georgia store location by submitting an online application on or about March 1, 2016.

15. On or about March 9, 2016, the store recruiter contacted Haugabrook at the telephone number listed on his application. After a brief phone interview, Haugabrook was extended an invitation to move on to the next phase of the recruitment process and attend an in-person interview, which he accepted.

16. On or about March 12, 2016, Haugabrook arrived at the store for his 2:00 p.m. interview.

17. When Haugabrook arrived, he was directed to the employee breakroom where other interviewees were located. While there, he was instructed to complete company paperwork. Haugabrook and the rest of the candidates were notified that interviews would be conducted in the order of completion of the required paperwork.

18. Due to his vision impairment, Haugabrook sought assistance with completing the paperwork from another interviewee who could help him identify the places on the documents where he needed to input his information.

19. After completing his paperwork, Haugabrook was interviewed by the store manager who extended Haugabrook an offer for the courtesy clerk (bagger/cart pusher) position. Haugabrook accepted the position. Haugabrook was qualified and able to perform the essential functions of the position.

20. After accepting the position, Haugabrook was taken to complete a drug screening. A Defendant employee assisted Haugabrook in completing the paperwork by placing his hand in several spots that required initialing, signing, and dating on the drug screen document.

21. On or about March 15, 2016, Haugabrook was informed about an upcoming orientation. On or about March 23, 2016, Haugabrook arrived at the store for orientation. He was asked to complete additional paperwork. He asked two of his fellow coworkers (a new employee and a current Defendant employee) for assistance in filling out the paperwork.

22. After completing the additional paperwork, Haugabrook was instructed to go to a computer station and complete his new-hire profile questionnaire and assessment.

23. Because of his disability, Haugabrook requested that Defendant accommodate him by increasing the size of the text on the screen or providing him with a larger monitor because he was having difficulty identifying the text on the screen. Defendant did not offer or suggest any available accommodations.

24. A Defendant employee told Haugabrook that Defendant did not have the software program with the capability of enlarging the text or a larger monitor for viewing the text.

25. Lacking these accommodations, the Defendant employee helped Haugabrook get started on the paperwork by reading the three (3) security questions populated on the screen. Then, she walked away.

26. Eventually, Haugabrook successfully entered his responses to the security questions.

27. Haugabrook asked for assistance with the next phase of the assessment. The same Defendant employee brought up the first question on the assessment and walked away.

28. The text was too small for Haugabrook to ascertain and select the appropriate response.

29. Due to the length of time it took Haugabrook to enter his responses, his computer screen timed out and logged off.

30. Haugabrook was instructed to log back into his profile and restart the assessment. As the Defendant employee assisted Haugabrook in logging back into his profile, she questioned his ability to finish the assessment.

31. While completing the computer assessments, the store manager observed Haugabrook having difficulty viewing the text on the computer screen. After seeing this, the store manager summoned Haugabrook to his office.

32. The store manager commented that he observed Haugabrook having a problem on the computer and asked Haugabrook if he had a visual impairment.

33. Haugabrook admitted that he did have a visual impairment.

34. In response, the store manager informed Haugabrook that he was being terminated because he posed a direct threat to the health and safety of others.

35. Based on the foregoing information, Defendant terminated Haugabrook on March 23, 2016.

36. Defendant unlawfully terminated Haugabrook's employment because of his disability and/or because he was regarded as a person with a disability due to his impairment.

37. The effects of the practices complained of above have been to deprive Haugabrook of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

38. The unlawful employment practices complained of above were intentional.

39. The unlawful employment practices complained of above were done with malice and/or with reckless indifference to the federally protected rights of Haugabrook.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying employment opportunities to any individual based on an actual or perceived disability without performing a full and complete objective individualized assessment of the employee's ability to safely perform the job, from denying reasonable accommodations to disabled employees, or engaging in any other employment practice that discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees with

disabilities and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Haugabrook whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

D. Order Defendant to make Haugabrook whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Haugabrook whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Haugabrook punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs in this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

s/ Pamela E. Palmer
Trial Attorney
Georgia Bar No. 882599
pamela.palmer@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(404) 562- 6973 (direct dial)
(404) 562-6905 (facsimile)